FILED

2005 Jun-22  AM 10:42
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# JASPER DIVISION

SHIRLEY TUCKER and
MARGARET O'NEIL,

      Plaintiffs,

vs.                                   CASE NO. CV-03-J-2869-J

WALKER COUNTY BOARD OF
EDUCATION,

      Defendant.

## MEMORANDUM OPINION

Pending before the court is the defendant's motion for summary judgment (doc. 21), brief in support of said motion and evidentiary submissions, to which the plaintiff filed an opposition (doc. 31). The defendant thereafter filed a reply (doc. 36). The court has considered the motions, evidence and arguments submitted by the parties in support of their respective positions.

## I.  FACTUAL BACKGROUND

Plaintiffs commenced this action on October 22, 2003, by filing a complaint alleging the defendant discriminated against each of them and retaliated against them, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.* Plaintiff Tucker alleges that the defendant discriminated against her based on her gender by failing to promote her to a supervisory position in the

transportation department.  Complaint, ¶ 7.  The position in question was filled by a male whom the plaintiff asserts was less qualified.  *Id.*  Plaintiff O'Neil claims that the defendant discriminated and retaliated against her by failing to promote her to several different positions within the Walker County School System.  Complaint, ¶ 8.

In the light most favorable to the plaintiffs, the facts of this case are as follows:

**Plaintiff Tucker:**

Plaintiff Tucker began working for defendant Walker County Board of Education in 1970 as an itinerant counselor.  Tucker depo. at 42, 44.  Since then, she has worked for defendant evaluating federal programs, as a resource person, Testing Coordinator, Secondary Supervisor, Textbook Coordinator, and Director of Curriculum and Instruction and Testing Coordinator.  *Id.*, at 44-47.  She has held the position of Director of Curriculum and Instruction since 1991 or 1992.  *Id.*, at 56-57.  However, she was informed recently by Superintendent Harvey Sanford that the proper title is "Secondary Supervisor."  *Id.*, at 58-59, 60-61, 221-222.  In 2003, the textbook program was removed from Tucker's job duties and placed with Mary Sue Robertson, who had been a peer of Tucker's.  *Id.* at 63-65, 227-228.  Her pay has never been decreased.  *Id.*, at 71.  Mary Sue Robertson is now over the plaintiff on the

organizational chart, but they make the same amount of money.  Tucker depo. at 225-226, 289; Trotter affidavit, ¶ 12.[1]

The EEOC charge underlying the facts of this case was filed on July 21, 1999. Tucker depo. at 78; exhibit 2 to Tucker depo.  Tucker also filed an EEOC charge in 2003, regarding the redesignation of her position to Secondary Supervisor.  Tucker depo. at 96, 186; exhibit 1 to Tucker depo.  She also filed EEOC charges in 1996, concerning defendant's failure to promote her to assistant superintendent of maintenance and transportation, and in 1982, which she did not pursue.  Tucker depo. at 81-85; exhibit 1 to plaintiff depo.  Tucker also sued this defendant in 1990 for sex discrimination, which resulted in a directed verdict for the defendant.  Tucker depo. at 87-89.  *See Tucker v. Walker Co. Board of Educ.*, CV 90-N-1998-J.

The 1999 EEOC charge is based on defendant's failure to promote Tucker to Maintenance/Transportation Supervisor.  Tucker depo. at 105-108, 113.  She alleges the position was filled by a male who had been employed for less time than she was, and then received higher pay increases than she did.[2]  *Id.*, at 107-109.  Tucker never applied for the position in question, but asserts that the job description was written in

---

[1]Alan Trotter was elected as Superintendent of the defendant school system in 1998, creating a vacancy in the position he had held, Supervisor of Maintenance/Transportation. Trotter affidavit, ¶¶ 5, 7.

[2]The individual selected for the position, Mickey Barrentine, has been employed by the defendant since 1974.  Trotter affidavit, ¶ 7.

3

a manner which excluded female applicants.[3] *Id.*, at 108-109, 116, 119-121, 278. She alleges that certification in administration was removed from the job requirements so that the individual hired, Mickey Barrentine, would be qualified for the position. *Id.*, at 110-111.

The plaintiff has no experience in transportation which qualifies her for the position. Tucker depo. at 112. She has never driven a bus and never held a commercial driver's license ("CDL") or bus driver's certification. *Id.*, at 112-114, 116-117, 152. She has no experience in maintenance. *Id.*, at 116-118. She knows no safety regulations involved with the operation of school buses, but states she could learn that and get a CDL. *Id.*, at 117. Tucker does not know what is involved in operating a bus on a daily basis for the school system and knows nothing about bus routes, but asserts she could learn all of these things. *Id.*, at 118, 146. The position also oversees maintenance employees such as electricians, which the plaintiff has never done. *Id.*, at 119-120. She has no idea of what the maintenance supervisor does on a daily basis. *Id.*, at 124, 132-133. However, the plaintiff states she is qualified

---

[3]The job description reads as follows:
Central Office-
> Maintenance/Transportation Supervisor/certified or currently pursuing certification in Administration and Supervision; shall be trained in school bus driving techniques by the State Department of Education and hold a valid Alabama School Bus driver's certification and a valid Commercial Driver's license with proper endorsements issued by the Department of Public Safety.

Exhibit 4 to Tucker depo.

4

for the position because "I could learn that in several days probably by driving a bus and things, but [Barrentine] could not have gotten certified in administration in that length of time and I was." *Id.*, at 147.   She does not know if he holds a Double A certificate, which she has.   *Id.*, at 155, 163, 269.   The position does not require a certification in administration, but does require a CDL and an Alabama school bus driver's certification.[4]   Sanford depo. at 125-127.   The position also includes oversight of   maintenance of all school buildings in the system, including heating, air conditioning, plumbing, and structural maintenance.   Trotter affidavit, ¶ 8.

Tucker complains that Barrentine was allowed on-the-job training but no women were.   Tucker depo. at 270.   However, Barrentine already held a CDL and a valid school bus driver's certification, and had training in school bus driving techniques.   Trotter affidavit, ¶ 7.

Tucker asserts that Barrentine's selection for the position was based on gender discrimination because men who are less qualified in administration and have less time in the Central Office are able to progress to higher rates of pay faster than women.[5]   Tucker depo. at 122-124.   She states that from 1997 to 1998, Barrentine

---

[4]The requirements for the position are found in the Alabama Administrative Code, § 290-2-4.05.

[5]Prior to becoming Supervisor of Maintenance/Transportation, Barrentine was Supervisor of Nutrition.   Tucker depo. at 141.

received raises totaling $17,000.00 while she received $5,000.00 in raises. *Id.*, at 123, 158-161.  However, in 1997 all administrative assistants, including Tucker, received raises of $5,000.00.   Trotter affidavit, ¶11.   The Finance Director and Maintenance/Transportation Supervisor did not receive raises then. *Id.*  In 1998, the state mandated 8.5% raises for all employees, plus the positions that did not get raises in 1997 received pay increases. *Id.*

She agrees that his position would require being on call all the time.  Tucker depo. at 129-131.  However, she argues that "he may be called back, but I take a lot of – I take a lot of material home with me that if I can't get – that I don't finish in a day and do it at home..." *Id.*, at 178.  According to Trotter, Barrentine's position pays more due to a longer workday and greater responsibility.  Trotter affidavit, ¶ 9.

After she did not get this position, the plaintiff wrote the superintendent asking to address the Board in open session regarding her salary schedule and her secretary.  Tucker depo. at 229.  She asserts she was not allowed to so, but two male assistant principals were. *Id.*, at 230; exhibit 1 to Tucker depo.  Tucker also requested approval for sick leave, which was denied by the Board.  Tucker depo. at 232.  She further states that, in 2002, she was denied access to teachers' personnel files and not allowed to read minutes from Board meetings. *Id.*,  at 232-233, 235-236; exhibit 1 to Tucker depo.  Gail Treadway, a female, who is the federal programs director, makes the same

amount of money as Barrentine. Tucker depo. at 167. Margaret Scurlock, the finance director, also received a pay increase at the same time as Barrentine and makes more than Tucker. *Id.*, at 164, 168-169. Tucker alleges that the defendant does not give her "the same consideration as far as paying me for those added duties when they will find a way to pay a man. Like if he's been working extra hours, after the job was posted one way making salary on the same salary scale as mine, and then changing it is an excuse. They have not done that for me." *Id.*, at 177-178. Tucker complains that she was treated differently from other women as well. *Id.*, at 184.

When asked how else she thought she had been the subject of sex discrimination or retaliation, Tucker explained that a fax machine in her office was removed by Barrentine and it was not replaced. Tucker depo. at 186-188, 210-211; exhibits 8 and 9 to Tucker depo. The fax machine was given to Margaret Scurlock, Mary Sue Robertson and Inez Bevins. Tucker depo. at 190. Her electric heater was also removed from her office, but it was returned. *Id.* at 191-192. One of her secretaries was reassigned to two male assistant supervisors. *Id.*, at 193. One secretary moved to another position which involved a raise, but Tucker states this was retaliation because she had tried to get this secretary a raise too. *Id.*, at 213; exhibit 10 to Tucker depo. She thinks all these incidents were in retaliation for her 1982 EEOC charge and/or her 1999 EEOC charge. Tucker depo. at 196, 213.

When asked if she wanted to be placed in the Maintenance/Transportation Supervisor position, Tucker responded that she could not answer that because "there's some things about it that I couldn't say flat out because he's getting paid on a – I've got a Double A, he's got a Master's. I'd be going back down to a Double A's salary – to a Master's degree salary. Do you see what I'm talking about?" Tucker depo. at 255-256.

**Plaintiff O'Neil**:

Plaintiff O'Neil was hired by the Walker County Board of Education in 1975. O'Neil depo. at 11. She worked as a teacher and an assistant principal for different schools within the defendant system. *Id*., at 11-12. She then became Assistant Vocational Director of the Walker County Center of Technology. *Id*., at 12. She retired from this position in 2000 due to disability. *Id*. She filed her current EEOC charge in 1998, but has filed other charges and grievances during her tenure with the defendant. *Id*., at 13. Her 1999 EEOC charge concerned her non-selection for the positions of Curry Elementary principal in January, 1999, and Dora High School principal in May, 1999, asserting it was due to gender discrimination. *Id*., at 13-14, 65. The other grievances also involved her non-selection for various principal positions with the school system. *Id*., at 14-19.

In 1991, she applied for and was promoted to the position of assistant principal at Martin High School.  O'Neil depo. at 24.  She worked there for two or three years, and was then transferred to Curry High School as a teacher while litigation with the Tenure Commission was ongoing.[6]  *Id*., at 25.  The litigation involved her termination from assistant principal.  *Id*., at 28.  The male principal was also terminated, but did not contest his termination. *Id*.

As a result of the litigation, in 1994 she was returned to her position at Martin High School, where Michael Banks had become was principal.  O'Neil depo. at 26.  Upon her return, another woman was assistant principal at Martin.  *Id*., at 29.  She was given no office, then told her desk would be in the counselor's office and given a broken chair.  *Id*.  Banks also told her he was going to have her arrested to try to get her to resign.  *Id*., at 30, 174.  Working conditions with Banks were so bad that, in 1994, the plaintiff transferred to the Central Office. *Id*., at 27, 34-35.  Thereafter, she became the Assistant Vocational Director.  *Id*., at 35.  She was told by a Board member that he wanted to make amends for the way she had been treated by the Board.  *Id*.  She was also told that Superintendent Sanford and the Director, Ted Craven, tried to block her placement at the Vocational School, but the Board placed

---

[6]A May14, 1992, letter to plaintiff O'Neil states that due to a reduction in the number of administrative positions, all assistant principal positions at all schools were going to be eliminated for the following school year and therefore she was being placed as a classroom teacher at Martin High School.  The letter then includes instructions to contest the transfer. Defendant Exhibit C.

her there anyway.  *Id.*, at 36.  She was told this was in retaliation for her "standing up for her rights" and because they wanted a man in that position.  *Id.*, at 36-37.  Plaintiff O'Neil became ill in April, 2000 and retired from that position in either May or June, 2000.  *Id.*, at 39; exhibit 17 to O'Neil depo.

Plaintiff O'Neil filed the 1999 EEOC charge after she was not selected for the Curry principal position because she believed her non-selection was in retaliation for her previous 1988 EEOC charge, prior grievances, and was also based on gender discrimination, even though the position was filled by Pat Lovelady, a woman. O'Neil depo. at 66-67,71, 73; exhibits 8-12 to O'Neil depo.  O'Neil states that Board Chairman, Bobby Holsomback told her in 1990 that the Board was not going to give her a principal's job because of her prior EEOC charges.  O'Neil depo. at 67.  She also claims that her non-selection for the principal position at Curry was in retaliation for the 1988 EEOC charge because Sanford had previously told her during a board meeting, "I will get you."[7]  O'Neil depo. at 76, 83-84, 90-91.  She was told by Craven that she would have been a principal a long time ago if she was not such a troublemaker.  *Id.*, at 71, 174.  O'Neil asserts that she was as qualified as Lovelady for the position, but she does not know what Lovelady's qualifications were.  *Id.*, at 73, 87-88.

---

[7]Sanford denies this.  Sanford depo. at 133.  The board meeting in question took place sometime in relation to her transfer from Martin High School in 1992.

Sanford states Trotter made the determination of who would be hired for the Curry position.  Sanford depo. at 82.  Although several men also applied for the position at Curry, O'Neil asserts that Lovelady got the principal job due to discrimination against O'Neil.  O'Neil depo. at 150-151. According to the Board rankings of the candidates for the position, Lovelady had the highest score. Defendant exhibit E; Sanford depo. at 82.  The rankings show that six women and two men scored higher than plaintiff O'Neil.  Defendant exhibit E.

The position at Dora High School was filled by Joe Potts.  O'Neil depo. at 104. O'Neil asserts that the Board violated its policy that "if more than one tenured teacher applies for the same position, all factors being equal ... qualifications, performance, past record, et cetera, seniority in the school system shall be the determining factor (sic) for selection."  *Id.*, at 105-106.  She asserts she had more seniority in the defendant system than Potts.  *Id.*  She also asserts that Potts was dishonest on his application because he claimed he had a Double A certificate, but he does not.  *Id*. at 108-109.  Both O'Neil and Potts were given credit during their interviews for a Master's degree as the highest degree either of them earned.  Trotter affidavit, ¶ 14. Potts received the highest score as a result of the interviews for the position.  Exhibit 1 to Trotter affidavit.  O'Neil believes she is as qualified as Potts for the Dora High School Principal position.  O'Neil depo. at 109.  The evidence submitted to the court

shows that Potts had been assistant principal for eight years at Dora High School and a teacher at Dora High School for fifteen more years when the position was posted. O'Neil depo. at 110; Trotter affidavit, ¶ 14.  As with the Curry position, O'Neil believes the interviewers for the Dora position were discriminating or retaliating against her because she felt she was well-qualified.  O'Neil depo. at 116.  According to Sanford, Potts was selected by the committee because they believed he would make the best principal at Dora.  Sanford depo. at 90-92.

Sanford asserts he has hired more women administrators than men administrators while he was superintendent.  Sanford depo. at 133.

## II.  STANDARD FOR EVALUATING SUMMARY JUDGMENT

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).   As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  In such a situation, there can be no genuine issue as to any material fact, since the complete failure of proof

concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

*Celotex Corp.,* 477 U.S. at 322-23. The party moving for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrates the absence of a genuine issue of material fact. *Id.* at 323. The burden then shifts to the nonmoving party to "go beyond the pleadings and by ... affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, Fed.R.Civ.Pro. 56(e). In meeting this burden the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). That party must demonstrate that there is a "genuine issue for trial." Fed.R.Civ.Pro. 56(c); *Matsushita*, 475 U.S. at 587, *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986). A factual dispute regarding a non-material issue will not preclude the defendant from succeeding on a motion for summary judgment. *Brown v. American Honda Motor Co.*, 939 F.2d 946, 953 (11th Cir.1991).

## III. DISCUSSION

The court must consider the evidence in the light most favorable to the plaintiff and may not make credibility determinations nor weigh the parties' evidence.

*Frederick v. Sprint/United Management Co.* 246 F.3d 1305, 1311 (11th Cir.2001); *Stewart v. Booker T. Washington Ins.*, 232 F.3d 844, 848 (11th Cir.2000). With these standards in mind, the court considers the plaintiffs' claims.

Both plaintiffs assert that they did not receive various promotions due to gender discrimination and retaliation for prior EEOC charges. Neither plaintiff has offered direct proof of such discrimination. When evidence of discrimination is circumstantial in nature, the Supreme Court has fashioned a three prong test for focusing the court's examination of the evidence and allegations. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817 (1973); *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248; 252-253; 101 S.Ct. 1089, 1093-1094 (1981); *Busby v. City of Orlando*, 931 F.2d 764, 777 (11th Cir.1991). First, the plaintiff must establish a *prima facie* case of discrimination. *McDonnell Douglas Corp.,* 411 U.S. at 802, 93 S.Ct. at 1824. Establishment of a *prima facie* case creates a presumption that the employer unlawfully discriminated against the employee. *Burdine,* 450 U.S. at 254, 101 S.Ct. at 1094; *Combs v. Plantation Patterns*, 106 F.3d 1519, 1527 (11th Cir. 1997). Meeting this burden creates a presumption of discrimination. *Combs,* 106 F.3d at 1528.

The burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the alleged discriminatory employment action. *Hall v. Alabama Ass'n of School Boards,* 326 F.3d 1157, 1166 (11th Cir.2003). The defendant

can feasibly present such strong evidence of a nondiscriminatory rationale that summary judgment is warranted. *Brown v. American Honda Motor Co., Inc.,* 939 F.2d 946, 950 (11th Cir.1991), *cert. denied*, 502 U.S. 1058 (1992)(quoting *Grigsby v. Reynolds Metals Co.,* 821 F.2d 590. 596 (11th Cir.1987).

Once a defendant presents a legitimate, nondiscriminatory reason for its actions, the presumption of discrimination drops from the case. *Burdine,* 450 U.S. at 255, 101 S.Ct. at 1094 and n. 10.  The plaintiff must then demonstrate by a preponderance of the evidence that the reason offered by the defendant was not the true reason for the employment decision, but rather a mere pretext for discrimination.  *McDonnell Douglas*, 411 U.S. at 804, 93 S.Ct. at 1825.  The employee may satisfy this burden by persuading the court that the proffered reason for the employment decision is not worthy of belief.  *Hall*, 326 F.3d at 1166.

### The Gender Discrimination Claims

In a "failure to promote case," the plaintiff meets her prima facie burden of proof by establishing that (1) she is a member of a protected class; (2) she was qualified for the position for which she applied; (3) she was rejected for the position; and (4) the position was filled with a person from outside the plaintiff's protected class. *Vessels v. Atlanta Independent School System,* --- F.3d ---, 2005 WL 1076558

(11th Cir.2005); citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

**Plaintiff Tucker**:[8]

Plaintiff Tucker has failed to establish a prima facie case of gender discrimination by her non-selection for the Supervisor of Maintenance/Transportation position because she cannot show she applied for or was qualified for the position. To demonstrate that she was qualified for the position, the plaintiff "need only show that he or she satisfies an employer's objective qualifications." *Vessels, supra*. Plaintiff Tucker fails to satisfy this burden. While plaintiff Tucker argues she could have received the necessary certifications had she been selected, this is insufficient to establish she was qualified at the time she applied. Additionally, while Tucker alleges that the defendant worded the announcement for the position in a manner to exclude women, the requirements for the position are found in the Alabama Administrative Code, § 290-2-4.05.

**Plaintiff O'Neil:**

*The Curry position:*

---

[8]In their argument concerning the position of "Maintenance/Transportation Supervisor," plaintiffs' argue that "[the] plaintiff, Margaret O'Neil, is also a female...." Plaintiffs' amended memorandum, at 18. The court notes that the evidence demonstrates that plaintiff Tucker, and not plaintiff O'Neil, applied for this particular position. However, if the plaintiffs now argue that O'Neil was not promoted to this position, the court notes O'Neil never applied for it.

Plaintiff O'Neil concedes that she cannot establish a prima facie case of gender discrimination by her non-selection for Curry Elementary principal because she cannot show that either the position was left open or filled by someone outside her protected class. Plaintiffs' amended memorandum in support of plaintiffs' opposition to defendant's motion for summary judgment, at 13.

*The Dora position:*[9]

Plaintiff O'Neil satisfies her burden to establish a prima facie case as to this claim. The defendant has also met its burden to provide the court with a legitimate, non-discriminatory reason for not selecting the plaintiff. *See e.g. EEOC v. Reichhold Chemicals*, 988 F.2d 1564, 1570 (11th Cir.1993); *Brown v. American Honda Motor Co., Inc.*, 939 F.2d at 950. The defendant simply states that it selected the best person to fill the position, and that person was Joe Potts.[10] This is clearly a reason that "might

---

[9]In their argument concerning the position of "Dora High School Principal," plaintiffs argue that "it is uncontroverted that the plaintiff, Shirley Tucker, is a female...." Plaintiffs' amended memorandum, at 13. The court notes only that the evidence demonstrates that plaintiff O'Neil, and not plaintiff Tucker, applied for this particular position. However, if the plaintiffs now argue that Tucker was not promoted to this position, the court notes Tucker never applied for it.

[10]Plaintiffs misconstrue defendant's argument concerning its selection of Potts. Defendant does not allege that Potts was "more qualified" for the position. Rather, defendant alleges that Potts was a better candidate for the position because he had been at the school in question for the previous 23 years. Although plaintiffs continually grasp on the fact that on Potts' application for the position he checked the "AA" certification line rather than the "Master's" line, the evidence is unequivocal that Potts was given credit during the interview process for a Master's degree. Therefore, the plaintiffs' argument that Potts was given the job over O'Neil because of his "misrepresentation" regarding his education is wholly unsupported by the evidence.

motivate a reasonable employer. *See e.g., Chapman v. AI Transport*, 229 F.3d 1012, 1030 (11th Cir.2001). Subjective evaluations are properly articulated as part of the employer's burden to produce a legitimate, gender-neutral basis for its decision. See *Vessels, supra*, citing *Fowle v. C & C Cola*, 868 F.2d 59, 65 (3rd Cir.1989) (other citations omitted). The defendant's burden to articulate a non-discriminatory reason for failing to promote an employee is a burden of production, which has been characterized as "exceedingly light." *Vessels, supra* (citations omitted). Defendant has offered the facts that Potts had been assistant principal at Dora High School for the previous eight years, a teacher at Dora High School for the fifteen years prior to that, and scored higher on his interview than the plaintiff. These are gender-neutral reasons. This court may not second guess the wisdom of an employer's decisions as long as they are not motivated by discrimination. *Id.*, citing *Combs*, 106 F.3d at 1541-43.

Because defendant met its burden to produce a non-discriminatory reason for its actions, the presumption of discrimination is eliminated and the employee must come forward with evidence sufficient to permit a reasonable fact finder to conclude that the legitimate reasons given by the employer were not the true motivations, but a pretext for discrimination. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 143, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). This evidence must reveal such

weaknesses or implausibilities in the employers' proffered reasons that a reasonable factfinder could find them unworthy of credence. *Cooper v. Southern Co.*, 390 F.3d 695, 725 (11th Cir.2004); *Silvera v. Orange County Sch. Bd.*, 244 F.3d 1253, 1258 (11th Cir.2001); *citing Combs*, 106 F.3d at 1538. O'Neil must show that each of the articulated reasons were not the real reasons for the employment decision. *Chapman* 229 F.3d at 1024-25.

The defendant concedes that plaintiff O'Neil was objectively qualified for the position. However, the defendant also established that Potts had been at the school for 23 years, eight of them as an assistant principal, was liked in the community and did better in his interview. Potts was given higher scores than O'Neil by every member of the interview committee. Additionally, the defendant established that, during this time frame, three of five principals appointed were female. O'Neil's only evidence of pretext is that she believes the interviewers for the Dora position were discriminating against her because she felt she was well-qualified. Conclusory allegations such as these without specific supporting facts are insufficient to satisfy plaintiff's burden to establish pretext. *See Grigsby v. Reynolds Metals Co.,* 821 F.2d 590, 597 (11th Cir.1987) (stating that plaintiff's conclusory allegations were not sufficient to raise inference of pretext or discrimination where employer offers extensive evidence of legitimate, nondiscriminatory reasons). O'Neil cannot show

pretext merely by questioning the wisdom of the defendant's reasons when the reasons given might motivate a reasonable employer. *Lee v. GTE Florida, Inc.*, 226 F.3d 1249, 1253 (11th Cir.2000).   In other words, quarreling with a reason that might motivate a reasonable employer is not sufficient. *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1088 (2004), citing *Chapman*, 229 F.3d at 1030.

In consideration of the foregoing, the court is of the opinion that plaintiff O'Neil has failed to produce sufficient evidence of a genuine issue of material fact that this claim may proceed to a jury.  The court shall grant defendant's motion on each of the plaintiffs' claims of gender discrimination.

### The Retaliation Claims

The plaintiffs also claim that they were not promoted to the respective positions in question because they both engaged in protected activity, namely filing EEOC charges.  Again, to establish a prima facie case of retaliation for engaging in protected activity, the court must use the *McDonnell-Douglas* burden shifting standard, discussed in detail, *supra*.  The plaintiffs must show that they (1) engaged in Title VII protected activity; (2) adverse employment actions occurred; and (3) causal connections between the protected activity and the adverse employment actions exist. *Brochu v. City of Riviera Beach,* 304 F.3d 1144, 1155 (11th Cir.2002); *Sullivan v. National Railroad Passenger Corp.*, 170 F.3d 1056, 1059 (11th Cir.1999).

Both plaintiffs filed prior EEOC charges, which are protected activities.  Both plaintiffs were not promoted to the positions in question, which are adverse employment actions.

**Plaintiff Tucker**:

Plaintiff Tucker has been complaining about the defendant since at least 1982. She filed EEOC charges in 1982, 1996, and 1999, as well as a lawsuit in 1990. However, she has received promotions and raises throughout the 23 year period from which she draws her allegations of retaliatory actions.  Tucker also claims that, since filing the current EEOC charge, a laundry list of other "retaliatory actions" have been taken against her, but none of these can be considered to rise to the level of an "adverse employment action."   "An adverse employment action is an ultimate employment decision, such as discharge or failure to hire, or other conduct that 'alters the employee's compensation, terms, conditions, or privileges of employment, deprives him or her of employment opportunities, or adversely affects his or her status as an employee.'" *Gupta v. Florida Bd. of Regents,* 212 F.3d 571, 587 (11th Cir.2000) (citation omitted).  Not all conduct taken by an employer which causes a negative affect on an employee constitutes adverse employment action.[11]   *Davis v. Town of*

---

[11]"This limitation is consistent with the basic principle that Title VII is ... neither a general civility code nor a statute making actionable the 'ordinary tribulations of the workplace.'" *Davis v. Town of Lake Park, Florida,* 245 F.3d 1232, 1239 (11th Cir.2001) (quoting *Gupta,* 212 F.3d at 587); *see also Wu v. Thomas,* 996 F.2d 271, 273-274 (11th Cir.1993) (noting

*Lake Park, Florida,* 245 F.3d 1232 (11th Cir.2001).  To be considered an adverse

employment action under Title VII's antiretaliation provision, the action 'must either

be an ultimate employment decision or else must 'meet some threshold level of

substantiality.'" *Stavropoulos v. Firestone,* 361 F.3d 610, 616-17 (11th Cir.2004).

Tucker has failed to establish any adverse employment action of substance other

than her non-promotion to the Maintenance/Transportation Supervisor position.

Having already found that Tucker neither applied for the position nor was qualified

for the position, the court is of the opinion that the failure to promote Tucker to this

position was not causally connected to her filing EEOC charges.  The court finds the

other acts of which Tucker complains are nothing more than everyday trials and

tribulations of the workplace.

**Plaintiff O'Neil**:

Plaintiff O'Neil asserts her 1988 EEOC charge was the protected activity that

was causally connected to her non-selection for the two principal positions.  The court

finds that the ten year gap between O'Neil's first EEOC charge and the alleged

adverse employment action is simply too great for a causal connection to exist.

Additionally, in the twelve years she was employed after her 1988 EEOC charge,

---

that an adverse employment action does not result from every unkind act, even those with
economic consequences).

O'Neil received promotions and raises.[12]  The members of the Board of Education, who have final decision making authority, as well as the Superintendent of the school system, changed during that time.  Thus, the individuals against whom she made complaints in 1988 were no longer the decision makers by the time she applied for the two positions in question.  In other words, no causal connection exists.[13]

The plaintiffs have offered only mere speculation that their EEOC complaints had any effect on the defendant's failure to promote either of them or were behind a host of perceived retaliatory actions which were no more than trivial.  As such, plaintiffs have not met their burden to proceed past a motion for summary judgment on their retaliation claim.

## CONCLUSION

The court having considered the foregoing, and finding that the plaintiffs have failed to establish any genuine issue of material fact sufficient to allow any of their claims to proceed to trial, the court **ORDERS** that the defendant's motion for

---

[12]Although O'Neil devotes a great deal to her "demotion" to a teacher in 1992, the court finds that even if such demotion was caused by her 1988 EEOC charge, the statute of limitations on this action has long since run.

[13]O'Neil's allegations that she was told that Superintendent Sanford and the Director, Ted Craven, tried to block her placement at the Vocational School, but the Board placed her there anyway, are not evidence of retaliation.  Although O'Neil asserts that she was told this was in retaliation for her "standing up for her rights" and because they wanted a man in that position, the plaintiff received the position referenced by these comments.

summary judgment is hereby **GRANTED**.[14]  The plaintiffs' claims are **DISMISSED**

**WITH PREJUDICE**.  Each party is to bear its own costs.

**DONE** and **ORDERED** this the 22nd day of June, 2005.

INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE

---

[14]The defendant argues that the plaintiffs' claims are untimely.  Defendant's brief in support of summary judgment, at 23.  Having determined that the defendant's motion is due to be granted on other grounds, the court did not consider this argument.